OPINION OF THE COURT
Edward M. Horey, J.
By an order to show cause the plaintiff has brought on a motion for injunctive relief. In particular the plaintiffs seek an order of this court that the defendant return 26 cattle which the defendant seized and removed from the plaintiffs’ farm premises. While not specifically denominated as a motion brought under the provisions of CPLR 6301 it is clear that the motion in issue falls within the parameters of that section.
The factual background giving rise to the motion is this: the defendant sold the plaintiff a herd of cattle. Sale was initially to be effected under an instrument denominated a "collateral security mortgage” dated February 1, 1984. Under the terms of this instrument the sale was secured by a mortgage on the farm realty of the plaintiff purchaser. However, before delivery of the cattle, the defendant demanded additional security interest in the cattle to be sold.
As a consequence of this demand a second instrument entitled "chattel mortgage” dated February 8, 1984 was executed by plaintiffs. Under the terms of this instrument the *207 defendant was given a chattel mortgage interest in "68 cows and 1 bull.”
Both instruments had the same provisions for payment of the indebtedness (sale price) which was $48,200. Payment was to be made by plaintiff by even monthly payments of $1,000. Interest was provided at 11% per annum.
After the delivery of the cattle to the plaintiff, the plaintiff under a claim of right culled a number of the cattle delivered. The defendant took exception to this practice. As a result of negotiations a third instrument was executed. This was also denominated a "chattel mortgage.” It is dated June 20, 1985. Under the terms of this instrument the collateral is recited to be "37 replacement cows.” The balance due was fixed at $39,552.77. Provision for payment of this reduced amount continued as previously provided, viz., at $1,000 per month with the balance drawing interest at 11% per annum. The court regards it as significant that the plaintiff has never been in default on the required contract payments.
In connection with the execution of the third instrument, a UCC financing statement on standard form UCC-1 was filed in the office of the Clerk of Cattaraugus County. It does not appear upon the motion whether or not any financing statement was ever filed in connection with the execution of the second instrument which was the first chattel mortgage, dated February 8, 1984, and securing "68 cows and 1 bull.” While the affidavit of the defendant Kent Cobado, sworn to the 28th day of January 1986 recites in paragraph 5 that he perfected the security interests by the filing of UCC financing statements and recites that true copies of the financing statements are attached as exhibit C, the facts are that only one financing statement was filed and this in connection with the second chattel mortgage of June 20, 1985 only.
It does appear that first instrument denominated a collateral security mortgage, dated February 1, 1984, giving security on the farm premises (realty), was recorded in the office of the Clerk of Cattaraugus County on February 9, 1984.
Necessary to a determination of the motion is a consideration of the scenario which attended the repossession of the cattle in issue.
After the second chattel mortgage no specific default was alleged by the defendant. Inferentially, it appears that he continued to be disturbed by the plaintiff’s practice of culling poorer cattle from the herd. Suddenly without any prior *208 warning, the defendant Cobado and two Deputy Sheriffs arrived at the premises of the plaintiff Szata. Mr. Szata, a cripple, proceeding with the aid of a cane and his wife went out of their home to meet Cobado and the deputies. It was then that the deputies advised Mr. and Mrs. Szata that Cobado "was here to repossess the collateral under the terms of the security agreement.”
Mr. Szata immediately replied that he was not in default and that Cobado was to leave the premises immediately and could not have the cattle.
Mr. Szata attempted to engage Cobado in conversation to no avail. Cobado simply turned and ran to the barn saying "to hell with this we’re taking the cows.”
Cobado entered the barn and started releasing the cattle from their stanchions.
A brief conversation ensued between Deputy Buchardt and Mr. and Mrs. Szata. Deputy Buchardt told them that Cobado had a violent temper and a reputation for violence. The deputy also told Mr. Szata that if he (Szata) got out of line he would be arrested.
After an unfruitful attempt to call their attorney, Mr. and Mrs. Szata went to the barn and again told Cobado to stop. Cobado simply laughed at them and continued to release the cattle and drive them around in the barn.
At this time while Cobado was beating the released cattle and trying to herd them through a small opening in the barn door, a Fay Hilliman, the mother-in-law of Mr. Szata and the mother of Mrs. Szata arrived at the barn. She joined the Szatas in ordering Cobado to desist. Cobado ignored them and continued to push the cattle through the barn opening.
Before the cattle were loaded onto the trucks assembled, Lt. Ernie Travis of the Cattaraugus County Sheriffs Department appeared on the scene. He advised Cobado that if he, Cobado, left with the cattle he would be arrested. Cobado ignored the warning and when he left with the cattle he was arrested for possession of stolen property. Later Mr. Szata was charged with fraudulent sale of mortgaged property. As of the argument of the motion at bar no disposition had been made of either criminal charge.
UCC 9-503 is the statute which embodies the rights of a secured party to use self-help in the event of a "default” by the debtor-purchaser. It provides in relevant part: "Unless otherwise agreed a secured party has on default the right to *209 take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action” (emphasis added).
We turn now to a consideration of those provisions for self-help which were contained in the three security instruments which were executed.
The collateral security agreement which was the first instrument executed and giving a secured interest in real property only contained a provision for seizure as follows: "upon default under any of the provisions of this mortgage, the mortgagee shall have the right forthwith, after any such default, to enter upon and take possession of said mortgaged premises, and to let the said premises and receive the rents, issues and profits thereof.”
Since the issues at bar do not concern themselves with attempted repossession of realty but in the repossession of the cattle, this provision is not relevant to our decision.
The second instrument executed, viz., the first chattel mortgage dated February 8, 1984, securing "68 cows and 1 bull” contained the following provisions for seizure, to wit: "In conjunction with, addition to or substitution for those rights, secured party, at his discretion, may (1) enter debtor’s premises peaceably by secured party’s own means or with legal process and take possession of the collateral, or render it unusable or dispose of the collateral on the debtor’s premises and the debtor agrees not to resist or interfere” (emphasis added).
The third instrument executed, viz., the second chattel mortgage dated June 20, 1985, contains an identical provision for seizure as that in the chattel mortgage of February 8, 1984 set forth above.
The quoted provisions from the two chattel mortgages follow an immediate prior contract provision also referable to default and repossession which provided that upon default "the secured party will have all the rights, remedies and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a secured party by the applicable section of the U.C.C. respecting 'default’ in effect as of the date of the security agreement.”
This court finds nothing in conflict between the clause in each chattel mortgage providing the secured party with the right to enter "debtor’s premises peaceably” and the immedi *210 ate prior provision in those chattel mortgages stating that the secured party has those rights as to repossession which are accorded under the UCC. This is for the reason as we have seen that the repossession rights granted under the UCC may only be exercised "without breach of the peace” (UCC 9-503).
Since the motion turns to consideration of "breach of the peace” we look to decisional law for definition of that term.
In People v Most (171 NY 423 [Ct App 1902, Vann, J.]), our highest court stated that a breach of the peace was well known at common law. The court then defined it as follows: "It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community.” (171 NY 423, 429, supra.)
The right to self-help by way of repossession is an assignment of the exclusive power of the sovereignty of a State. This is true because it represents a delegation of the exclusively governmental function of resolving disputes. (See generally, Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 162; Fuentes v Shevin, 407 US 67, 93.) The delegation of the right of repossession to a secured party is not a carte blanche one. Rather, it is specifically limited and exercisable only without a breach of the peace. It’s exercise should be strictly confined to those situations, rare as they may be, when the repossession can be accomplished peaceably. Physical confrontation or the treat thereof is not necessary to effect a breach of the peace.
Certain it is that in ignoring the order of the purchasers to desist and remove himself from the premises; in ignoring the admonition of Lt. Travis of the Sheriff’s Department to desist; in demonstrating his contempt for all restraint by his statement "to hell with this we’re taking the cows;” by proceeding to release the cows, beating and herding them to the trucks, without heed of the warning that his continuance would result in his arrest, the defendant Cobado not only engaged in conduct which was likely to produce violence and consternation but did in fact produce violence, consternation and disorder.
This court finds as a matter of fact and law that the retaking of the plaintiffs’ cattle was a "breach of the peace.”
Accordingly, the decision of the court is that the defendant Cobado forthwith at his cost and expense redeliver the cattle reposessed by him to the plaintiff inclusive of any calves born of those cattle during his possession thereof.