**John BARRETT and Lynne Barrett, Plaintiffs–Appellants,**

**v.**

**Mary HARWOOD; Scott Smith; John Durant; James Phillips and The Village of Malone, Defendants–Appellees.**

**No. 97–9411.**

United States Court of Appeals, Second Circuit.

Argued Sept. 2, 1998.

Decided Aug. 25, 1999.

Mark A. Schneider, Law Office of Alley & Schneider, Plattsburgh, New York, for Plaintiffs–Appellants.

Richard F. Hunter, Fischer, Bessette & Muldowney, LLP, Malone, New York, for Defendants–Appellees John Durant, James Phillips and The Village of Malone.

Mary Harwood, Constable, N.Y., submitted letter brief as pro se Defendant–Appellee.

Before: NEWMAN, CARDAMONE, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

This litigation was precipitated by the repossession of plaintiffs' truck by a tow truck operator who was acting at the behest of the seller of the vehicle. Complicating the issues surrounding this event was the presence of a Village Police officer dispatched to the scene to prevent a breach of the peace; his presence raises a question of state action.

The episode giving rise to this appeal occurred on November 8, 1996, in Malone, New York, a small upstate village. The incident involved John Barrett, an over-the-road trucker, his wife, his ex-wife, a

tow truck operator, and a village police officer. Plaintiffs sued the town and its officer, the seller, and the repossessor in federal district court for violating their civil rights, and plaintiffs now appeal from the grant of summary judgment in favor of the defendants and the dismissal of their complaint.

## BACKGROUND

### A. *Repossession of Truck*

Plaintiffs John and Lynne Barrett purchased the 1982 Kenworth truck in June 1995 from defendant Mary Harwood, John Barrett's ex-wife. The total purchase price was $11,000, to be paid in monthly installments of $300 before the tenth of each month. The Barretts took immediate possession of the truck, which they used as the tractor in their business of long distance hauling by tractor trailer. Barrett obtained the original certificate of title, although it remained in Harwood's name.

A year and a half later, Harwood retained defendant Scott Smith, who operated a garage in Malone and did repossessions, to repossess the truck, because allegedly—as she told Smith—the Barretts' payments were overdue and they had forged her name on a registration form to obtain license plates from another state. The Barretts denied being in arrears or forging Harwood's signature.

Smith prepared to repossess the truck by verifying with the New York State Department of Motor Vehicles that Harwood was its title owner and, anticipating that John Barrett would resist repossession, by contacting the Village of Malone Police Department to request that a police officer be dispatched to the scene where Smith planned to repossess the vehicle. Sergeant Ritchie of the Police Department told Smith that an officer was not presently available, but that he would send one if available. Sergeant Ritchie subsequently ordered Officer Durant to the scene, informing him that a breach of peace was anticipated.

At 3:00 p.m. on November 8, while the Barretts were seated in the restaurant across the street, Officer Durant arrived at the lot where the truck was parked. The parties dispute whether the repossession was underway before Officer Durant arrived, but it is undisputed that Officer Durant did not physically assist that process. By the time John Barrett exited the restaurant and walked to the parking lot, the tow truck operator had at least begun to connect the truck to his wrecker. When Barrett asked Officer Durant what was going on, the officer advised him that Smith was repossessing his truck. Barrett objected, stating they "weren't taking the truck" and adding that his wife had proof of timely payments. He left the parking lot to get his wife, Lynne.

When they returned, Harwood had arrived; it was she who had told Smith that the truck was in the parking lot across from the restaurant. Lynne Barrett produced for Officer Durant the purchase agreement and the signed receipts and, according to the officer's deposition, he examined the documents. The officer then informed Mrs. Barrett that the incident was a civil matter in which the police could not get involved and recommended they get a lawyer.

At this point, inflammatory words were exchanged between Barrett and Harwood, prompting Officer Durant to direct them to quiet down. Barrett then struck Smith, though the parties dispute the forcefulness of the contact. Officer Durant said that Barrett "slapped" or "backhanded" Smith, and Smith testified that he received a forceful blow. John Barrett characterized the contact as merely a touch, like part of a gesture, saying he had known Smith all his life and that Smith was laughing at him. Once contact was made, Officer Durant came forward and warned Barrett: "If you start any trouble here, you'll be going in the back seat of my car. Do you understand me, mister?" Barrett asserts that he understood this statement to mean the officer would arrest him if he took any

further measures to resist repossession of his truck.

The Barretts accordingly handed Smith the keys to the truck, stating in an affidavit filed later that the officer's threat of arrest was the sole reason they gave up the keys. After keeping the truck in his possession for a period of time, Smith purchased it from Harwood for $3,500, obtaining a duplicate certificate of title from her.

### B. Procedural History

On January 7, 1997 the Barretts filed a 42 U.S.C. § 1983 action asserting their constitutional right to due process was violated by the unlawful repossession of their truck and seeking damages and equitable relief. Named as defendants were Harwood, the seller, Smith, the repossessor who effected the repossession, Officer Durant, and Village of Malone Police Chief Phillips. An amended complaint filed later added the Village of Malone as a defendant. The complaint also raised state law causes of action against Harwood and Smith. Officer Durant, Chief Phillips, the Village of Malone (Malone defendants) and Smith answered the amended complaint. When Harwood failed to answer, plaintiffs moved for a default judgment against her.

The Barretts moved for a temporary restraining order and a preliminary injunction to obtain their truck from Harwood and Smith, which the district court denied. In denying the motion, the trial court determined that the Barretts had failed to establish a likelihood of success on the merits because it found no state action present. On July 25, 1997 the Malone defendants moved for summary judgment, the Barretts cross-moved for partial summary judgment, and Smith cross-moved for summary judgment. At a hearing on September 8, 1997 the district court orally granted the defendants' motions and denied the Barretts' cross-motion. It concluded that, even if state action existed, Officer Durant was protected by qualified immunity and that the Village and Chief Phillips could not be liable to plaintiffs

because plaintiffs had failed to show the alleged constitutional violation had resulted from a municipal custom or policy. The court also held that because adequate post-deprivation remedies were available, the Village's policies did not violate due process.

With respect to the private parties, the district court ruled that the Barretts failed to show Smith was acting under color of state law when he repossessed the truck. It denied the motion for a default judgment against Harwood after concluding that there was no jurisdiction under § 1983 against her as a private actor. The judgment so providing was entered on October 28, 1997. It is from this judgment that the Barretts appeal. We affirm.

### DISCUSSION

■ Pertinent to the discussion of due process that follows is the New York law on self-help repossession. On default of payment, under the New York Uniform Commercial Code, a secured party has the right to take possession of its collateral. "In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." N.Y. U.C.C. Law § 9–503 (McKinney 1990). Hence, where repossession cannot be accomplished without a breach of the peace, a retaking must be effected by legal process. See Mauro v. General Motors Acceptance Corp., 164 Misc.2d 871, 875–76, 626 N.Y.S.2d 374 (N.Y.Sup.Ct.1995) (noting that construction of § 9–503 is strict).

The Barretts contend that Officer Durant's involvement in the repossession converted the private repossession into state action. They assert that even assuming Harwood had a right to repossess the truck under § 9–503, the right to do so without using judicial process ended when they objected to the repossession, thereby disturbing the peace. They maintain that after the breach occurred, Officer Durant had a duty to advise Smith to cease repos-

sessing their truck and to proceed through legal action. According to appellants, Officer Durant aided in the unlawful repossession through his conduct and threat of arrest. Thus, the Barretts declare that these defendants acting under color of state law violated their constitutional right to due process.

The district court's order granting summary judgment in favor of all the defendants is reviewed *de novo*, keeping in mind the New York law regarding self-help repossession. That relief is appropriate only if, in resolving all ambiguities and drawing all inferences in favor of the non-movant (here plaintiffs), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), there is no genuine issue of material fact and "the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c).

## I Due Process Right

 The Barretts have a constitutional right "not to have property in which [they] enjoyed a lawful possessory interest [repossessed] by state action in violation of the constitution." *Haverstick Enters., Inc. v. Financial Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir.1994). The Constitution requires notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property. *See Fuentes v. Shevin*, 407 U.S. 67, 80, 96–97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 340–42, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In *Fuentes v. Shevin*, the Supreme Court held that Mrs. Fuentes had a property interest in personal goods she had purchased under a conditional sales contract, even though title to the goods remained with the vendor. 407 U.S. at 86, 92 S.Ct. 1983. Her property interest was created by the substantial installment payments she made on the goods and by the terms of the conditional sales contract, which granted her continued possession and use of the goods prior to the transfer of title. *See id.*

The Barretts' property interest is analogous to that recognized in *Fuentes*. They too had made substantial installment payments and had proof of that fact in the form of receipts. In addition, Harwood, the seller, had agreed to their continued possession and use of the truck prior to completion of the balance of payments owed, when presumably they would then be entitled to the certificate of title in their, rather than Harwood's, name. *See Alexandre v. Cortes*, 140 F.3d 406, 410–11 (2d Cir.1998) (finding property interest in vehicle when plaintiffs owed money on it under a purchase agreement, did not have title until satisfaction of the agreement, and were in arrears). As a consequence, the Barretts have sufficiently established a property interest in the truck so that it cannot be taken by state action without notice and an opportunity to be heard. Thus, we next examine whether there was state action present.

## II State Action

### A. *In General*

 The Fourteenth Amendment of the Constitution safeguards a citizen's right not to be deprived of property by any state without due process of law, and the Amendment is violated only "by conduct that may be fairly characterized as 'state action.'" · *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). To establish a deprivation of property, a plaintiff must show that a person acting under color of any state statute, regulation, custom or usage deprived plaintiff of a right secured by the Constitution. *See* 42 U.S.C. § 1983 (1994). In *Lugar* the Supreme Court explained that in a § 1983 action brought against a state official, "the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." 457 U.S. at 929, 102 S.Ct. 2744.

Appellants urge that Officer Durant's involvement in the repossession converted

a private repossession into state action. We have not had occasion to address directly the point at which official involvement in an otherwise private repossession is sufficient to constitute state action. Although several courts have considered this question in analogous circumstances, no bright line has been drawn delineating the exact point at which an officer's presence and activities at the scene of a repossession become state action in aid of the repossession.

■ In the relevant case law, we discern a spectrum of police involvement at the scene of a repossession. At one end of the spectrum is *de minimis* police involvement not amounting to state action in aid of the repossession. For example, a police officer's mere presence at the scene is insufficient to constitute state action. *See Wright v. National Bank,* 600 F.Supp. 1289, 1295 (N.D.N.Y.), *aff'd,* 767 F.2d 909 (2d Cir.1985); *see also United States v. Coleman,* 628 F.2d 961, 963–64 (6th Cir. 1980) (no state action where police parked around corner from scene of repossession and were simply standing by in case of trouble).

■ Further along the spectrum we find involvement greater than mere presence, yet still insufficient to constitute state action in aid of the repossession. Falling into this category is the Fifth Circuit's decision in *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 510–12 (5th Cir.1980); *see also id.* at 513–15 (Garza, J., dissenting) (giving a "more complete recital of the facts"). In *Menchaca,* the repossessors summoned police officers after the debtor, Menchaca, resisted their attempts to take his car. Upon arrival at the scene, an officer informed the debtor that "repossession was a civil matter and that the only reason the police where there was to quiet a reported disturbance." *Id.* at 510. The debtor alleged, but all the officers denied, that one officer also said she was going to arrest the debtor if he didn't give the repossessors the keys. *See id.* at 511–12. Even though such action by the officers

went beyond mere presence, the Fifth Circuit ruled it did not constitute state action vis-à-vis the repossession. *See id.* at 513.

When an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action. Hence, several circuits addressing this issue, when a police officer was involved either in a repossession or in similar activities, have found state action or ruled that the issue at least survived a motion for summary judgment. *See, e.g., Soldal v. County of Cook,* 942 F.2d 1073, 1075 (7th Cir.1991) (*en banc*), *rev'd on other grounds,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (state action issue survives summary judgment when police presence at trailer removal and eviction of occupants prevented plaintiff from resisting eviction); *Jones v. Gutschenritter,* 909 F.2d 1208, 1210–13 (8th Cir.1990) (state action issue survives summary judgment where debtor saw uniformed, armed officer standing with individual disconnecting electricity and officer did not depart before disconnection complete); *Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir. 1981) (state action where plaintiff yelled at repossessor to get away from his truck; officer then ordered plaintiff to stand back or get away, and told plaintiff that officer was there to stand by, and that further interference would result in arrest); *Booker v. City of Atlanta,* 776 F.2d 272, 274 (11th Cir.1985) (state action issue survives summary judgment where police officer arrived with repossessor, giving the repossession "a cachet of legality" and intimidating debtor into not exercising his right to resist).

## B. *Applied to This Case*

Hence, based on existing case law, the crucial question is whether the police officer was (1) present simply to stand by in case there was a breach of the peace, or

(2) taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession. The Barretts maintain that the repossession did not begin until Officer Durant arrived, and that when John Barrett rushed from the restaurant to the parking lot, Smith and Officer Durant were both present, with the officer standing next to plaintiffs' truck.

Viewing all the evidence in the light most favorable to the Barretts, as the non-movants, we are convinced, as was the district court, that Officer Durant's actions amounted to no more than the carrying out of his duty to prevent violence in the event of a breach of the peace and that there was no state action to facilitate the repossession. The situation presented here closely resembles that in *Menchaca,* where the Fifth Circuit also found no state action. Officer Durant was dispatched to the repossession scene for the purpose of maintaining the peace once the Barretts had exercised their legal right to object to the repossession in a non-violent manner. He informed the Barretts that the repossession was a civil matter in which he could not get involved. When John Barrett then struck Smith, Officer Durant told him, "[i]f you start any trouble here, you'll be going in the back seat of my car."

Although Barrett testified that he believed the statement to mean that if he took any additional measures to resist the repossession, he would be arrested, Officer Durant was acting well within his role as a law enforcement officer, regardless of Barrett's subjective interpretation of Durant's role. Barrett's act of aggression justified the officer's response. The officer's presence at the scene was as a peace officer and as such, a state actor. But the fact of his peacekeeping presence did not convert the private act of repossession by Smith, the tower, into state repossession action. Consequently, we agree with the district court's ruling that under the circumstances there was no state action that deprived plaintiffs of a property interest.

Our concern with our concurring colleague's position is that it focuses almost exclusively on the town's policy rather than the police officer's conduct. If we follow *Parratt v. Taylor,* 451 U.S. 527, 535–36, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), it would be necessary to decide first whether state action was present before examining the town's policy. In *Parratt,* of course, state action was conceded. *Id.* at 536, 101 S.Ct. 1908. But here, even were a bright-line rule based on *Parratt* to preclude town liability, an officer might still be liable if the evidence showed, as Judge Parker suggests, for example, that the officer came on the scene at the request of the repossessor and said to the debtor, "don't interfere with this repossession," or "you know you're not the rightful owner of this truck." Hence, a factual inquiry into the officer's conduct seems likely to occur in most cases, even where the town has a neutrally-worded policy.

### III Resolution

The Supreme Court has recently stated that in situations where qualified immunity may be available, a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right." *Wilson v. Layne,* —— U.S. ——, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (May 24, 1999) (Rehnquist, C.J., for a unanimous Court). Absent state action, Officer Durant has committed no constitutional violation. Thus, we need not reach the issue of qualified immunity.

We likewise find no possibility of liability for the Village of Malone. In order to state a § 1983 claim against a municipality, a litigant must allege that the municipality implemented and adopted a "policy statement, ordinance, regulation, or decision" or established or acquiesced in a custom that caused the unconstitutional activity. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because

there has been no unconstitutional activity, we affirm the grant of summary judgment in favor of the Village.

▉▉▉ The district court also granted Smith's summary judgment motion after determining that state action did not exist. A private person—not a government official—acts under color of state law for purposes of § 1983 when "he has acted together with or has obtained significant aid from state officials" or because his conduct is otherwise chargeable to the state. *Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. Since we have already concluded that Officer Durant did not participate in the repossession to an extent sufficient to "act together with" or "aid" Smith and Harwood in the repossession, the private individuals cannot be found liable for a constitutional violation under § 1983.

Finally, we observe that whatever deprivation of rights the Barretts may have suffered when their truck was repossessed may not be vindicated in a federal civil rights suit, but may be asserted under New York tort law in state court. If the Barretts can prove that the initial seizure of the truck was wrongful, they might be able to pursue an action for damages against Smith or Harwood for tortious conversion and seek an order requiring its return if it was seized in violation of N.Y. U.C.C. § 9–503. *See, e.g., Hilliman v. Cobado*, 131 Misc.2d 206, 499 N.Y.S.2d 610 (1986).

## CONCLUSION

For the foregoing reasons, the judgment granting summary judgment in favor of all the defendants is affirmed. No costs to either party.

PARKER, Circuit Judge, concurring:

I agree with the result reached by the majority opinion but am writing separately because I disagree with the reasoning expressed in Section II. In my opinion, the analysis which denies liability as to Officer Durant springs from *Parratt v. Taylor,*

451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in which an inmate sued prison officials when a hobby kit he had ordered through the mail was allegedly lost in the prison mail system. There, the Supreme Court held that, even though the inmate had been deprived of property under color of state law, 451 U.S. at 536–7, 101 S.Ct. 1908, there was no liability because the deprivation had not occurred because of "some established state procedure," *id.* at 543, 101 S.Ct. 1908, but instead resulted from the unauthorized failure of state agents to follow established state procedures.

Here, both the policy at issue and the actions of Officer Durant are comparable to the prison mail system at issue in *Parratt*; in neither case is there any indication that the state or state officials set out to deprive individuals of their property. The Village's policy, in this case, is worded neutrally and addresses only peacekeeping functions; moreover, officers are specifically instructed not to become "involved" in repossessions. While it is certainly conceivable for a municipality to have a different policy, one which would require police to order any repossession terminated the moment a breach of the peace arises, the fact that the Village of Malone has chosen to promulgate the one it has can hardly be said to constitute "deliberate indifference" to the constitutional rights of others under the standard set forth in *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Based on the evidence produced by Plaintiffs, I find that it was not "obvious" that the implementation of the Village's policy would "likely" result in a violation of Constitutional rights, *id.* at 390, 109 S.Ct. 1197, nor were "the police, in exercising their discretion, so often violat[ing] constitutional rights that the need for further training [in this case, training on the New York Uniform Commercial Code] must have been plainly obvious to the city policymakers," *id.* at 390 n. 10, 109 S.Ct. 1197.

Officer Durant's actions, in implementing the policy, do not reflect an intent to aid Smith in effecting the repossession; rather, they reflect an intent to prevent Barrett from striking Smith, and they were actions well within Durant's authority as a police officer. The situation might be different if Durant had said something like, "Don't interfere with this repossession," or "you know you're not the rightful owner of this truck," but his primary concern appears to have been for Smith's immediate physical safety. While it is undeniably the case that Officer Durant's act of restraining Barrett was intentional, the assistance he lent thereby to the repossession in progress was unintentional. Even assuming that Durant's actions were inappropriate, they reflect at most only negligence on his part in implementing the town's policy. In my opinion, section 1983 liability does not arise simply because an officer could have found a more fair or more appropriate way of handling a given situation.

Therefore, I propose the following rule with regard to police action at the scene of repossessions: so long as the primary focus of a town's policy is to deal with a breach of the peace, which an officer, of course, must do, neither he/she nor the town can be held accountable for a violation of due process simply because his or her actions as a peacekeeper may incidentally provide assistance to the repossessor. I believe that such a rule is not only mandated by *Parratt*, but would be much easier to implement than the test employed in the majority opinion, which requires the court to engage in an exacting factual analysis of the officer's conduct in order to determine whether state action exists.

Nonetheless, because I agree with the majority that no Constitutional violation has occurred, I agree with its decision not to reach the qualified immunity issue, and I agree with its finding that there can be no liability as to the Village or as to Smith.