# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Murray v. Poani*, 2012 IL App (4th) 120059

---

| | |
|---|---|
| Appellate Court Caption | ANTHONY MURRAY and SHARON MURRAY, Plaintiffs-Appellants, v. MARK POANI, Individually and in His Official Capacity as Officer of the Chatham Police Department; and THE VILLAGE OF CHATHAM, Defendants-Appellees, and JPMORGAN CHASE, NA; and JOHN DOE REPOSSESSION COMPANY, Defendants. |
| District & No. | Fourth District<br>Docket No. 4-12-0059 |
| Argued<br>Filed | December 5, 2012<br>December 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was improperly entered for defendants in an action alleging that defendant police officer violated plaintiff's constitutional due process rights by becoming actively involved in the repossession of plaintiffs' vehicle, since there were factual disputes with regard to the officer's involvement in the repossession and whether he exceeded his role as a peacekeeper. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-L-260; the Hon. Leo Zappa, Judge, presiding. |
| Judgment | Reversed and remanded. |

| | |
|---|---|
| Counsel on Appeal | Dmitry Feofanov (argued), of ChicagoLemonLaw.com, P.C., of Lyndon, for appellants. |
| | Stephen R. Kaufmann (argued) and Michael P. Murphy, both of HeplerBroom, LLC, of Springfield, for appellees. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Justices Appleton and Knecht concurred in the judgment and opinion. |

# OPINION

¶ 1     Plaintiffs, Anthony and Sharon Murray, brought suit under section 1983 of the Civil Rights Act of 1871 (Civil Rights Act) (42 U.S.C. § 1983 (2006)) against defendants, police officer Mark Poani and the Village of Chatham, for violating their constitutional due process rights. Plaintiffs allege Officer Poani, acting under color of state law, became actively involved in a vehicle repossession and violated their constitutional due process rights. In September 2011, the trial court granted defendants' motion for summary judgment.

¶ 2     Plaintiffs appeal, arguing the trial court improperly granted summary judgment on the evidentiary record. Specifically, plaintiffs assert the court improperly concluded (1) Poani did not participate or aid in the private repossession, and (2) qualified immunity applied. Because we agree with plaintiffs an issue of material fact exists, we reverse and remand for further proceedings.

¶ 3                                  I. BACKGROUND

¶ 4     In November 2010, plaintiffs filed a complaint against defendants alleging violations of section 1983 of the Civil Rights Act. Additionally, and not at issue in this appeal, plaintiffs asserted various claims against JPMorgan Chase and John Doe Repossession (the repossession company's actual name has not been determined).

¶ 5     On April 1, 2011, defendants filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2010)). An affidavit from Officer Poani was attached to the motion. In May 2011, plaintiffs filed a response containing counteraffidavits from both Anthony and Sharon.

¶ 6     Plaintiffs' version of the facts is as follows: On December 16, 2008, during the early hours of the morning, plaintiffs were at their home in Chatham, Illinois. Their 2004 Pontiac Grand Prix sedan sat in the driveway. Plaintiffs purchased the Pontiac in 2005 and it was financed through JPMorgan Chase. Something awoke Sharon and she went to investigate. Outside, Sharon encountered a repossession team attempting to tow her Pontiac. She protested and a confrontation ensued. Officer Poani arrived to the scene. (Poani's affidavit

asserts a member of the repossession team named "Brandon" contacted the police about a "paperwork dispute" and Poani was dispatched to plaintiffs' residence.) Sharon accused the repossession team of "stealing" her car. Sharon presented Poani with "receipts" showing she was current on her monthly car payments and not in default. Poani refused to look at the "receipts." Sharon accused Poani of assisting in the "theft" of her car. Poani explained "It does not matter, they have a valid repossession order, you have to give them the keys." (Poani's affidavit states he advised Sharon "this was a civil matter" and he could not interfere.) Sharon continued her protestations and Poani told her "If you continue to interfere, I will have to detain you." (Poani's affidavit disputes he threatened to arrest Sharon.) Poani remained on the scene during the entire repossession. (Poani's affidavit concedes he left the residence after the vehicle was repossessed.)

¶ 7       Plaintiffs pleaded Poani's actions were pursuant to an established policy of the Chatham police department. Plaintiffs' counteraffidavits did not refute Poani's affidavit stating the Chatham police department does not have an official policy, custom, or plan to provide official assistance or aid in the repossession of automobiles by private parties.

¶ 8       In August 2011, the trial court held a hearing on defendants' summary judgment motion. We note no transcript or bystander's report of this hearing was made available on appeal. Ill. S. Ct. R. 323 (eff. Dec. 13, 2005).

¶ 9       In September 2011, the trial court granted defendants' motion for summary judgment finding (1) Poani "did not seize the vehicle, nor take it into custody"; (2) Poani allowed plaintiffs to remove personal property from the vehicle prior to the repossession; (3) Poani "was called to the scene merely to preserve the peace during the repossession"; and (4) Chatham did not have an official policy, custom, or plan for handling disputed repossession situations but only a policy "to preserve the peace."

¶ 10                                    II. ANALYSIS

¶ 11       Section 2-1005 of the Code permits a defendant to move, at any time, for summary judgment in his favor for all or any part of the relief sought against him. 735 ILCS 5/2-1005(b) (West 2010). Summary judgment may be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010).

¶ 12                                 A. Standard of Review

¶ 13       "The purpose of summary judgment is not to try a question of fact but simply to determine if one exists." *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280, 864 N.E.2d 227, 232 (2007). Summary judgment should not be allowed unless the movant's " 'right to judgment is clear and free from doubt.' " *Id.* (quoting *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424, 706 N.E.2d 460, 463 (1998)). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008). "If the undisputed material facts

could lead reasonable observers to divergent inferences, or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Forsythe*, 224 Ill. 2d at 280, 864 N.E.2d at 232. "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper." *Williams*, 228 Ill. 2d at 417, 888 N.E.2d at 9.

¶ 14     This court reviews a trial court's grant of a motion for summary judgment *de novo*. *Garcia v. Young*, 408 Ill. App. 3d 614, 616, 948 N.E.2d 1050, 1052 (2011).

¶ 15                           B. Section 1983 of the Civil Rights Act

¶ 16     Section 1983 of the Civil Rights Act is a vehicle for vindicating the deprivation of federal constitutional or statutory rights under the color of law. 42 U.S.C. § 1983 (2006). "To plead such a claim, a plaintiff must allege that a state actor deprived him of a property or liberty interest without due process of law." *Nelson v. Crystal Lake Park District*, 342 Ill. App. 3d 917, 921, 796 N.E.2d 646, 650 (2003). Thus, a section 1983 claim requires a showing of (1) a deprivation, (2) a property interest, and (3) state action.

¶ 17     Plaintiffs were deprived of their property interest in their Pontiac. As Officer Poani was in uniform and on duty as a Chatham police officer at the time of the incident, there is no issue as to whether he was a state actor during the repossession. The real question is whether the deprivation occurred as a result of state action.

¶ 18                                       C. State Action

¶ 19     Plaintiffs contend Officer Poani became actively involved in the repossession by threatening to arrest Sharon if she continued to interfere with the repossession and ordering her to turn over the vehicle's keys. Plaintiffs assert when they confronted the repossession team, a "breach of the peace" under section 9-609(b)(2) of the Uniform Commercial Code (UCC) (810 ILCS 5/9-609(b)(2) (West 2008)) resulted, making the repossession illegal and the subsequent removal of their Pontiac–with Poani's assistance–theft. A self-help repossession is only permitted under the statute if it can be accomplished without a breach of the peace. *Id.*

¶ 20     The level of a police officer's involvement in a repossession is a fact-sensitive area of law. *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004). "The distinction between maintaining neutrality and taking an active role is not to be answered in the abstract. There is no precise formula, and the distinction lies in the particular facts and circumstances of the case." *Harvey v. Plains Township Police Department*, 635 F.3d 606, 610 (3d Cir. 2011). Courts should examine a police officer's role in a private repossession in their "totality." *Id.* Federal courts addressing this issue have noted a "spectrum of police involvement" in determining whether a police officer's actions rise to state action during a private repossession. *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999). At one end of the spectrum, not amounting to state action, is a *de minimis* involvement such as mere presence. *Id.* However, when a police officer "begins to take a more active hand in the repossession," the police assistance may cause a private repossession to take on the character of state action. *Id.* As the Sixth Circuit Court of Appeals recently noted, a debtor's "objection, particularly

when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess. A police officer's arrival and close association with the creditor during the repossession may signal to the debtor that the weight of the state is behind the repossession and that the debtor should not interfere by objecting." *Hensley v. Gassman*, 693 F.3d 681, 689-90 (6th Cir. 2012).

¶ 21 Factors that may indicate state action during a private repossession include (1) an officer's arrival with the repossessor; (2) intervening in more than one step of the repossession process; (3) failing to depart before completion of the repossession; (4) standing in close proximity to the creditor; (5) unreasonably recognizing the documentation of one party over another; (6) telling the debtor the seizure is legal; and (7) ordering the debtor to stop interfering or be arrested. *Marcus*, 394 F.3d at 819; *Harvey*, 635 F.3d at 610. Federal courts have concluded "the crucial question is whether the police officer was (1) present simply to stand by in case there was a breach of the peace, or (2) taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession." *Barrett*, 189 F.3d at 302-03; see also *Marcus*, 394 F.3d at 819 ("the overarching lesson of the case law is that an officer may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance").

¶ 22 In the instant case, the trial court relied on several cases in concluding state action did not occur. In its September 2011 order, the court cited *Johnson v. City of Evanston, Illinois*, 250 F.3d 560 (7th Cir. 2001), provided by plaintiffs. That case involved an incident where the vehicle was removed by an auto mechanic and then placed in the police department's custody. *Id.* at 561-62. *Johnson* did not involve a police officer at the scene of the private repossession and is not helpful in determining the level of police involvement during a private repossession that triggers state action.

¶ 23 In its January 2012 order dismissing the motion to reconsider, the trial court found *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980), factually similar. In that case, the police were called out to a disturbance resulting from an attempted repossession. *Id.* at 510. The police officer told the plaintiff the repossession was a "civil matter and that the only reason the police were there was to quiet a reported disturbance." *Id.* The plaintiff was informed "that he could be arrested if he continued to use loud and abusive language and create a breach of the peace." *Id.* The *Menchaca* court stated "police intervention and aid in this repossession by defendant Chrysler's agents would constitute state action," but found the testimony failed to show such intervention and aid. *Id.* at 513. The trial court also cited *Meyers v. Redwood City*, 400 F.3d 765 (9th Cir. 2005), in its January 2012 order. The *Meyers* court held the police officers were not active participants in the repossession and attempted to resolve a dispute between the repossession man and the plaintiff. *Id.* at 772. During the repossession, the parties became engaged in a fracas quickly escalating into a physical confrontation. *Id.* at 768. The police arrived to a "scene not of their making" where the repossession man threatened he would make a citizen's arrest under California law against the plaintiff or he would not arrest her if she allowed him to take the vehicle. *Id.* at

772. This created a "Hobson's choice" for the plaintiff to decide whether to allow the repossession man to tow her car or subject herself to a citizen's arrest for battery on the repossession man. *Id.* at 773.

¶ 24  Both *Menchaca* and *Meyers* are distinguishable. *Menchaca* arose from a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of federal subject-matter jurisdiction. *Menchaca*, 613 F.2d at 510-11; Fed. R. Civ. P. 12(b)(1). The district court held an evidentiary hearing to determine the officers did not intervene or aid the repossessors. *Menchaca*, 613 F.2d at 513. Here, there has been no evidentiary hearing to determine Poani's involvement or aid to the repossessors. *Meyers* involved a citizen's arrest and not a police officer threatening to arrest the debtor if she interfered with the repossession. The record does not indicate "Brandon" threatened to effectuate a citizen's arrest of Sharon for interfering with the repossession. (Section 107-3 of the Code of Criminal Procedure of 1963 permits a private person to "arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed" (725 ILCS 5/107-3 (West 2010)).) Neither *Johnson*, *Menchaca*, nor *Meyers* is conclusive.

¶ 25  The instant case is factually and procedurally similar to *Marcus v. McCollum*, 394 F.3d 813 (10th Cir. 2004). In *Marcus*, the repossessor came onto the debtor's property to reclaim a vehicle and a dispute ensued. *Id.* at 816. A police officer arrived and was soon joined by three additional officers. *Id.* The debtors asserted the repossessor had no claim to the vehicle and the repossessor showed the police documentation of his interest. *Id.* The police officers stated the repossession was a "civil matter in which the police could not be involved" and instructed the debtors to "stop their interference." *Id.* Plaintiffs claimed the officers told them to keep their mouths shut or they would go to jail. *Id.* at 816-17. The *Marcus* court concluded the plaintiffs' version raised a fact issue as to "whether the police officers were neutral in their efforts to keep the peace" and reversed the district court's grant of summary judgment in favor of the police officers. *Id.* at 822-23. The Tenth Circuit noted "no single fact or inference is determinative of whether the officers affirmatively aided" in the repossession and "what exactly each of the officers did and said, to whom, in what tone, and with what indicia of state sanction are issues that should be determined at trial." *Id.* at 822-23.

¶ 26  Also similar is *Barrett*, where the debtors contested the repossession of their Kenworth truck. *Barrett*, 189 F.3d at 299. The debtors presented a police officer with documentation and signed receipts to show they were current on their payments. *Id.* The officer informed the debtors the incident was a "civil matter" and the police could not get involved and recommended they get a lawyer. *Id.* A physical confrontation ensued between the debtor and repossessor and the police officer warned the debtor " '[i]f you start any trouble here, you'll be going in the back seat of my car.' " *Id.* The *Barrett* court affirmed the district court's grant of summary judgment because the debtor's "act of aggression justified the officer's response" of threatening arrest and the police were a "peacekeeping presence." *Id.* at 303.

¶ 27  This court is not required to follow federal court decisions but may do so if we find them persuasive. *Better Government Ass'n v. Blagojevich*, 386 Ill. App. 3d 808, 814-15, 899 N.E.2d 382, 388 (2008). We find *Marcus* and *Barrett* instructive on the proper analysis in determining whether a police officer's involvement in a private repossession arose to state action.

¶ 28                              D. State Action in This Case

¶ 29     The critical question is whether Officer Poani was simply keeping the peace (as he is clearly entitled to do as a police officer) or affirmatively aiding the repossessor or intimidating plaintiffs from exercising their legal right to object to the repossession. A "breach of the peace" under section 9-609 of the UCC (810 ILCS 5/9-609 (West 2008)) has been defined to mean "conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility." *Chrysler Credit Corp. v. Koontz*, 277 Ill. App. 3d 1078, 1082, 661 N.E.2d 1171, 1173 (1996). The *Koontz* court stated " 'an unequivocal oral protest,' without more," was not a breach of the peace. *Id.*, 661 N.E.2d at 1174. Here, the facts, viewed in the light most favorable to plaintiffs, indicate the "confrontation" between plaintiffs and the repossession team led to a loss of public order and was likely a "breach of the peace" for section 9-609 purposes as Sharon made several protestations and the repossession team contacted the police to resolve the dispute.

¶ 30     Several facts, viewed in the light most favorable to plaintiffs, indicate Officer Poani affirmatively aided the repossessor and intimidated plaintiffs from exercising their legal right to object to the repossession under section 9-609 of the UCC, as Poani (1) was called to the scene by the repossessor, (2) was present throughout the duration of the repossession, (3) ordered Sharon to turn the vehicle keys over, (4) threatened to arrest Sharon if she interfered with the repossession, and (5) recognized the "repossession order" over Sharon's protestations. Accordingly, several of the factors delineated in *Marcus* are present to indicate state action. The first two facts are undisputed by Poani's affidavit. The last three facts are disputed. In its September 2011 order, the trial court found Officer Poani "was called to the scene merely to preserve the peace during the repossession." This implies the court found Officer Poani acted within his peacekeeping role for the duration of the situation. Sharon's affidavit asserted Poani threatened to arrest Sharon if she continued to protest and interfere with the repossession and not for criminal misconduct. Viewing the events in the light most favorable to the nonmoving party, whether Poani acted as a peacekeeper or facilitated the repossession by ordering Sharon to turn over the vehicle keys and threatening to detain her is at the heart of the controversy and cannot be determined on the current evidentiary record. The evidentiary record does not support defendants' assertion Sharon would not have attempted to prevent the repossession had Officer Poani not been present as Poani's affidavit indicates the "paperwork dispute" preceded his arrival. It is also unclear whether Poani unreasonably recognized the documentation of one party over another. Poani asserted when "Brandon" produced the "repossession order," Poani informed plaintiff this was a "civil matter" and he could not intervene. However, Sharon asserted Poani refused to look at payment receipts and told her "Brandon" had a "valid" repossession order. It is unclear whether this "repossession order" was an "order" from the creditor to repossess the vehicle or a court order. In sum, as factual disputes exist as to (1) Officer Poani's level of involvement in the repossession and (2) whether he exceeded his role as a peacekeeper, the trial court improperly granted summary judgment.

¶ 31     As noted above, it is contested whether Officer Poani refused to examine receipts

provided by Sharon indicating payments were current and acknowledged the repossessor's "repossess order" over Sharon's protestations. Whether Poani acted as a "curbside courtroom" in attempting to resolve the documentation dispute is another factor in determining whether state action is shown. Briefly, we note a police officer must not act as a "curbside courtroom" in resolving a dispute between a repossessor and debtor as this is not the proper function of the police. See *Marcus*, 394 F.3d at 820 ("It stands to reason that police should not weigh in on the side of the repossessor and assist an illegal repossession."). Proper judicial remedies exist for the creditor to reclaim the property (810 ILCS 5/9-609(b)(1) (West 2008)), and such a dispute should be resolved by the courts, not a police officer.

¶ 32                                    E. Qualified Immunity

¶ 33    Defendants contend if we conclude the trial court erred in determining no issue of material fact exists, we should hold plaintiffs' claims are barred by qualified immunity.

¶ 34    The United States Supreme Court "has identified two key inquiries for qualified immunity assertions: (1) whether the facts, taken in the light most favorable to the plaintiffs, show the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

¶ 35    The trial court's September 2011 order is unclear whether summary judgment was granted on the basis (1) no material issue of fact existed as to whether a constitutional violation occurred, or (2) whether the law was clearly established. The court found Officer Poani did not seize the vehicle or take it into custody, and plaintiff was allowed to remove property from the vehicle prior to repossession. The order concludes several "facts" indicate no constitutional violation occurred, and it does not address whether the constitutional right was clearly established.

¶ 36    Plaintiffs have the burden of showing the constitutional right was clearly established. *Gonzalez*, 578 F.3d at 540. " '[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.' " *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Earlier cases need not involve "fundamentally similar" or "materially similar" facts for officials to be on notice that their conduct violates clearly established law. (Internal quotation marks omitted.) *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

¶ 37    Since *Soldal v. Cook County, Illinois*, 506 U.S. 56, 71-72 (1992), police officers have known they may act to preserve the peace but cross a constitutional line when they become actively involved in a private repossession. Courts addressing this same issue of police involvement in a private repossession consistently conclude "[s]tate law limiting self-help to those situations where a breach of the peace is avoided, and federal law recognizing that

an unlawful repossession can amount to state action and a deprivation of property under § 1983," are clearly established. *Marcus*, 394 F.3d at 824; see also *Cochran v. Gilliam*, 656 F.3d 300, 309-11 (6th Cir. 2011) (police officers' "active involvement" in assisting seizure of property violated clearly established law); *Hensley*, 693 F.3d at 694 (following *Cochran*); *Menchaca*, 613 F.2d at 513 (see discussion above).

¶ 38    We conclude a reasonable officer would have understood aiding a repossessor by threatening the debtor with arrest and ordering her to turn over the vehicle keys was clearly established as constitutionally impermissible.

¶ 39    As discussed above, in the light most favorable to the plaintiffs, the facts show defendants may have violated plaintiffs' constitutional rights by facilitating the unlawful taking of personal property. Crediting plaintiffs' version of the facts, Officer Poani's involvement in the repossession went beyond mere acquiescence to intervention on behalf of the repossessors. We are well aware it is important to resolve immunity questions at the earliest possible stage in litigation (*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*))), but as an issue of fact still exists as to Poani's involvement in the repossession, we cannot say defendants are entitled to qualified immunity at this juncture. See *Pruitt v. Pernell*, 360 F. Supp. 2d 738, 746 (E.D.N.C. 2005) (unable to conclude if police officers were acting within scope of law enforcement function for qualified immunity); *Poteet v. Sullivan*, 218 S.W.3d 780, 791-92 (Tex. Ct. App. 2007) (holding officers not entitled to summary judgment on qualified immunity claim where factual dispute existed about officers' involvement in repossession). Upon further factual development, defendants may certainly prevail but as there has been little to no discovery, it is too early to make a determination about Poani's level of involvement.

¶ 40    As we conclude the facts, in the light most favorable to plaintiffs, show Officer Poani may have engaged in unconstitutional conduct and would not be entitled to qualified immunity, on the current record, we need not address Chatham's contention it is not liable under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

¶ 41    We note the trial court's September 2011 order found Chatham did not have an official policy, custom, or plan concerning aid in private repossessions; rather, according to the court, Chatham had a policy "to preserve the peace." Poani's affidavit stated the Chatham police department has no official policy, custom, or plan to provide official assistance or aid in the repossession of automobiles by private parties. First, Poani's affidavit does not provide a foundational basis–such as his prior experience responding to similar situations or involvement in the policy-making process–to support his personal knowledge of official Chatham police department policies, customs, or plans as required by Illinois Supreme Court Rule 191(a) (eff. July 1, 2002). See *Jones v. Dettro*, 308 Ill. App. 3d 494, 499, 720 N.E.2d 343, 347 (1999) ("Unsupported assertions, opinions, and self-serving or conclusory statements do not comply with Rule 191(a)."). As such, Poani's affidavit should be limited to stating there is no official policy, custom, or plan of which he, as a police officer, is aware. His affidavit does not conclusively show Chatham has no such official policy, custom, or plan. Second, while plaintiffs' counteraffidavits did not directly refute Poani's statement, plaintiffs have not had an adequate opportunity to conduct discovery to acquire sufficient

evidence to counter this factual averment. See *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 368-69, 851 N.E.2d 626, 633-34 (2006) (where defendant points out absence of evidence supporting plaintiff's position, summary judgment appropriate only when the nonmovant has had adequate opportunity to conduct discovery).

¶ 42                                    III. CONCLUSION

¶ 43        For the foregoing reasons, we reverse the trial court's judgment and remand the cause for further proceedings.

¶ 44        Reversed and remanded.