SEYMOUR, Circuit Judge.
Carl McCollum, a creditor of plaintiff Diana Marcus, towed away an automobile parked in plaintiffs’ driveway. Plaintiffs filed this lawsuit asserting a civil rights claim under 42 U.S.C. § 1983 against Mr. McCollum, the tow truck service, and police officers present during the incident. The complaint alleges violations of plaintiffs’ Fourth Amendment right to freedom from unreasonable search and seizure and Fourteenth Amendment right to procedural due process, as well as several state tort claims.
The district court entered summary judgment in favor of the police officers on plaintiffs’ federal civil rights claim based on its conclusion that the officers’ conduct did not amount to state action as required for a viable § 1983 claim and that, in any event, the officers were entitled to qualified immunity. We reverse based on our determination that disputed, material facts *816 preclude both entry of summary judgment and the grant of qualified immunity.[1]
I.
Mrs. Marcus borrowed money from Mr. McCollum in December 2001 and gave him the title to an automobile in January 2002. On February 22, 2002, Mr. McCollum, accompanied by a driver from Swope 24-Hr. Wrecker Service, L.L.C., approached the Marcus home and noticed defendant Mason Wilson, an on-duty Shawnee police officer, parked across the street in a school parking lot. It is undisputed that Mr. McCollum told Officer Wilson he was going to repossess a car and wanted Officer Wilson to be aware of the situation.[2] Mr. McCollum did not have the title to a car with him, but he had a “piece of paper” with a vehicle identification number (VIN) matching that of a 1978 Pontiac Firebird. Aplt. app., tab 4(D) at 16.
Mr. McCollum and the tow truck operator then began the process of towing the Pontiac from the Marcuses’ driveway. According to plaintiffs, the Pontiac was owned by Mrs. Marcus’ husband, plaintiff Mike Marcus, and was not the collateral securing Mr. McCollum’s loan. Mr. Marcus was not home, but Mrs. Marcus and her minor son, plaintiff Nicholas Shiel, were there. They noticed Mr. McCollum’s activities, ran outside, and began arguing loudly with him. They told him he had no right to the Pontiac, and that he had title to “a car in Bethel.” Id.
Officer Wilson called for back-up assistance in the developing dispute and drove his patrol car over to the Marcuses’ driveway. It is disputed whether Officer Wilson was alerted by the confrontation and drove over on his own initiative or did so because Mr. McCollum beckoned him. See id., tab 4(C) at 2 (Officer Wilson’s affidavit, stating he decided to step in when he observed a heated argument); tab 4(D) at 16 (Mr. McCollum’s deposition testimony, stating he waved for Officer Wilson to come over); tab 6(A) at 20 (Mrs. Marcus’ deposition testimony, stating that Mr. McCollum raised his hand and Officer Wilson came over). Officer Wilson was soon joined by three other officers, defendants Jennifer Thomas, David Powell, and Kent Borcherding.
Mrs. Marcus and Nicholas asserted to the officers that Mr. McCollum had no legal interest in the automobile. Although the officers may have looked at Mr. McCollum’s “piece of paper,” they did not ask for further documentation of his ownership interest. Id., tab 4(D) at 16. Plaintiffs continued arguing with Mr. McCollum and also made several attempts to unhook the car from the wrecker. At some point, according to plaintiffs, Officer Wilson poked Nicholas “several times in the chest with sufficient force to knock [him] backwards.” Id., tab 6(G) at 2.
Although the officers stated that repossession was a civil matter in which the police could not be involved, they also told Mrs. Marcus and Nicholas to stop their interference, advising “let them do what they’re going to do and take it up in small claims court.” Id., tab 6(A) at 21. Mrs. Marcus and Nicholas contend Officer Wilson stated that if the situation escalated, “someone” would be going to jail. They *817 claim that an officer told them “for our best bet, we should keep our mouth shut, go back in the house or we would indeed go to jail that day.” Id. at 22. Because they took these statements as threats directed toward them, they followed the officers’ instructions and allowed the car to be towed away. Id. at 24. Defendants assert that no one was threatened with force or arrest. Id., tab 4(C) at 3. Officer Wilson stayed until the wrecker drove away; the other officers left when the situation seemed to be under control.
In the wake of the incident, the Marcus family brought this action in state court against Mr. McCollum, the wrecker service, the police officers, and the City of Shawnee (the City). In their federal civil rights claim arising under 42 U.S.C. § 1983, plaintiffs asserted that the police officers “entered upon the property of the Plaintiff and aided a certain Carl McCol-lum and the employee of SWOPE 24 HR. WRECKER SERVICE, L.L.C., An Oklahoma Limited Liability Company, in the unlawful taking of a certain 1978 Pontiac Firebird Automobile belonging to the Plaintiff, MIKE MARCUS,” id., tab 1 at 3, and “used the threat of force and threats to have DIANA MARCUS and her son NICHOLAS SHIEL, a/k/a NICHOLAS MARCUS, taken into custody if they did not yield to the authority of the police in the taking of said property,” id.; all in violation of their Fourth and Fourteenth Amendment rights to due process and freedom from unreasonable search and seizure, id. at 5.
The City removed the case to federal district court and defendants moved for summary judgment. The district court concluded the officers’ conduct did not amount to the state action required for a viable § 1983 claim and, alternatively, that the officers were entitled to qualified immunity: The court entered summary judgment in favor of the police officers and Mr. McCollum on the § 1988 claim and remanded the remainder of the case to state court. In this appeal, plaintiffs continue to pursue their § 1983 claim against the police officers.[3]
*818 II.
A § 1983 claim must be based on a right secured by the Constitution and laws of the United States. 42 U.S.C. § 1988. Plaintiffs’ asserted constitutional interests are well-established. Under the Fourteenth Amendment, procedural due process requires notice and a pre-deprivation hearing before property interests are negatively affected by governmental actors. See Fuentes v. Shevin, 407 U.S. 67, 80-82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The Fourth Amendment prohibition against unreasonable search and seizure is implicated “when ‘there is some meaningful interference with an individual’s possessory interests in [his] property.’ ” Soldal v. Cook County, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).
The language of the Fourteenth Amendment establishes “an ‘essential dichotomy’ between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which ‘however discriminatory or wrongful,’ is not subject to the Fourteenth Amendment prohibitions.” Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1446 (10th Cir.1995) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)) (further quotation omitted). Governmental defendants
normally can be held responsible for a private decision only when [they have] exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.
Blum v. Yaretsky, 457 U.S. 991, 1004-05, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (citations omitted).
Although we have not examined the state-action issue in the context of police officer involvement with a private party’s repossession of property, several other circuits have.[4] These circuits are in agreement as to the law: officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor. The Second Circuit has articulated this continuum as follows: “[w]hen an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action.” Barrett v. Harwood, 189 F.3d 297, 302 (2d Cir.1999).
*819 This view is echoed among the circuits. See, e.g., Cofield v. Randolph County Comm’n, 90 F.3d 468, 471 (11th Cir.1996) (“state action might be present if an officer were to facilitate a repossession”); Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th Cir.1981) (“police intervention and aid in the repossession does constitute state action”); United States v. Coleman, 628 F.2d 961, 964 & n. 1 (6th Cir.1980) (police compulsion, encouragement, direction, assistance, or affirmative participation would constitute state action); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 513 (5th Cir.1980) (“police intervention and aid in this repossession ... would constitute state action”).
This area of the law is particularly fact-sensitive, so the circumstances must be “examined in their totality.” Howerton v. Gabica, 708 F.2d 380, 384 (9th Cir.1983). If the evidence showed, for example, that an “officer came on the scene at the request of the repossessor and said to the debtor, ‘don’t interfere with this repossession,’ or ‘you know you’re not the rightful owner of [the property],’ ” an officer might be hable. Barrett, 189 F.3d at 303; see also Greco v. Guss, 775 F.2d 161, 168 (7th Cir.1985) (finding state action where deputy told debtor that the seizure was legal); Harris, 664 F.2d at 1127 (finding state action where debtor was told to stop interfering or he would go to jail; debtor would have prevented the repossession if police had not been there). An officer’s “arrival with the repossessor” could give “the repossession a cachet of legality” and have “the effect of intimidating [the debtor] into not exercising his right to resist, thus facilitating the repossession.” Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir. 1985). “Even if unintended, such an effect could constitute police ‘intervention and aid’ sufficient to establish state action.” Id. (quoting Menchaca, 613 F.2d at 513).
Other factors courts take into consideration include intervening at more than one step, Howerton, 708 F.2d at 385; failing to depart before completion of the repossession, Jones v. Gutschenritter, 909 F.2d 1208, 1211-12 (8th Cir.1990); standing in close proximity to the creditor, id.; and unreasonably recognizing the documentation of one party over another, Abbott v. Latshaw, 164 F.3d 141, 149 (3d Cir.1998). To repeat, the overarching lesson of the case law is that officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance.
As is typical of these cases, a self-help repossessor in Oklahoma may take possession of property without judicial process only if he or she has a security interest in the targeted property and no breach of the peace takes place. See Okla. Stat. tit. 12A, § 1-9-609. This rule derives from the Uniform Commercial Code, which states “[a]fter default, a secured party ... may take possession of the collateral ... (1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace.” U.C.C. § 9-609 (formerly U.C.C. § 9-503) (emphasis added);[5] see also Helfinstine v. *820 Martin, 561 P.2d 951, 954 (Okla.1977) (recognizing the current statutory “right to peaceful self-help repossession of property ... has roots deep in the common law”).
The repossessor’s “greatest obstacle to self-help repossession is the requirement that repossession must be accomplished without a breach of peace.” Roger D. Billings, Jr., Handling Automobile Warranty and Repossession Cases § 11:24 (2d ed.2003). The Oklahoma Supreme Court instructs that “[t]he circumstances of each case must be considered in determining whether or not a ‘breach of peace’ has taken place, and the jury is the judge of the facts.” Ben Cooper Motor Co. v. Amey, 143 Okla. 75, 287 P. 1017, 1018 (1930). The plaintiffs resistance to the taking of his property need not be “strong.” Id. at 1018-19. “The general rule is that a debtor’s request for the financer to leave the car alone must be obeyed.” Billings at § 11:38. “[E]ven polite repossessors breach the peace if they meet resistance from the debtor.” Id. at § 11:36. If a breach of peace occurs, self-help repossession is statutorily precluded. See, e.g., DeMary v. Reiker, 302 N.J.Super. 208, 695 A.2d 294, 301 (1997) (due to breach of the peace, secured party’s repossession without judicial process unlawful); Ivy v. General Motors Acceptance Corp., 612 So.2d 1108, 1110 (Miss.1992) (same); Deavers v. Standridge, 144 Ga.App. 673, 242 S.E.2d 331, 333 (1978) (same); Henderson v. Security Nat. Bank, 72 Cal. App.3d 764, 140 Cal.Rptr. 388, 391 (1977) (same); Nicolson’s Mobile Home Sales, Inc. v. Schramm, 164 Ind.App. 598, 330 N.E.2d 785, 790 (1975) (same); Stone Mach. Co. v. Kessler, 1 Wash.App. 750, 463 P.2d 651, 654 (1970) (same).
It stands to reason that police should not weigh in on the side of the repossessor and assist an illegal repossession. To diffuse a volatile situation while ensuring a lack of state action, officers could direct both parties to seek a judicial determination. A “curbside courtroom,” in which officers decide “who was entitled to possession, is precisely the situation and deprivation of rights to be avoided.” Abbott, 164 F.3d at 149.[6]
III.
Whether defendants are entitled to summary judgment is a question of law we review de novo. Croy v. Cobe Labs., Inc., 345 F.3d 1199, 1201 (10th Cir.2003). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R.Civ.P. 56(c). In applying this standard, “we view the evidence and draw reasonable inferences therefrom facts in the light most favorable to the nonmoving party.” Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1180 (10th Cir.2003). At the summary judgment stage, “our role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate fact-finder, to sustain [the] claim.” Foster v. Alliedsignal, Inc., 293 F.3d 1187, 1195 (10th Cir.2002). The question before us, therefore, is whether the undisputed facts show that the officers fulfilled their responsibility to *821 keep the peace without aiding Mr. McCol-lum’s private repossession. See Booker, 776 F.2d at 274.
At the time of the seizure at issue, Mr. McCollum’s security interest in the Pontiac Firebird parked in the Marcuses’ driveway was disputed. Mrs. Marcus and Nicholas assert they told the officers they disagreed with Mr. McCollum’s right to take the Firebird and that the VIN on the Firebird did not match the VIN indicated in the title Mrs. Marcus had given to Mr. McCollum. From the summary judgment filings, it is difficult to determine the extent of the officers’ inquiry into the legality of Mr. McCollum’s claims. There is evidence, however, that they credited Mr. McCollum’s contentions over those of plaintiffs. As the district court stated in its order, “the lawfulness of the repossession is an issue which remains to this day.” Aplt. app., tab 7 at 6.
There are also some differences between the parties’ versions of the facts relating to the manner in which Officer Wilson was alerted to the situation.[7] A resolution of these facts may be pertinent to whether Mr. McCollum’s actions provoked a breach of the peace and whether a factfinder could infer that Mr. McCollum and Officer Wilson were engaged in a joint endeavor. Additionally, there is evidence that the officers repeatedly told Nicholas and Mrs. Marcus to allow Mr. McCollum to take possession of the automobile and threatened them with arrest if they continued to resist. Officer Wilson remained at the plaintiffs’ residence until the towing was completed, and he may also have forcibly poked Nicholas.
For legal authority supporting the entry of summary judgment, defendants rely heavily upon Menchaca, a case from the Fifth Circuit in which the facts recited by the majority resemble the instant case: repossessors came to take a vehicle, the owners voiced their objection, the police came to “check out the disturbance” and keep the peace, and they warned the owner he would be arrested if he continued to use loud and abusive language. See Menchaca, 613 F.2d at 510. Over a dissent, the court concluded the state action question was central to the district court’s jurisdiction to hear the case. Ultimately, the appellate court found no state action and affirmed the district court’s dismissal for lack of subject matter jurisdiction.
Menchaca is distinguishable both procedurally and factually. First, the car in Menchaca was parked on a public street, so there was no trespass issue. Next, there was no dispute in Menchaca that the repossessor was a secured creditor of the disputed property with the right to repossession upon default. In contrast, the re-possessor in this case went onto private property to initiate the repossession and plaintiffs informed the officers that the VIN of the car the repossessor was taking did not match the title in his possession. These two facts go to the propriety of the officers’ actions: repossessing a car to which one indisputedly has title when it is parked on a public street requires less official sanction from officers than doing so when the car is not subject to repossession and is parked on private property.[8]
*822 Procedurally, Menchaca arose in the context of dismissal for lack of subject matter, jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Fifth Circuit relied on the fact that “[although the allegations of a complaint are taken as true in a challenge to a plaintiffs right to any relief, they may .be tested by extraneous evidence when the court’s jurisdiction is attacked.” Menchaca, 613 F.2d at 512. The district court had held a jurisdictional fact-finding hearing to take the testimony of “both plaintiffs and three of the defendants ... under direct and cross examination.” Id. at 510. It then made findings “based on its evaluation of the testimony of all the witnesses.” Id. [9] In our case, the district court was faced with a motion for summary judgment and was not empowered to make factual findings based- on credibility determinations.[10]
While no single fact or inference is determinative of whether the officers affirmatively aided Mr. McCollum, under plaintiffs’ version of the facts a jury could find that the officers did more than merely acquiesce or stand by in case of trouble. The controlling question to be resolved by a factfinder is whether the officers were simply keeping the peace, as they were entitled to do, or aiding Mr. McCollum, as they were not.
Crediting plaintiffs’ version of the facts, as we must, the objective evidence raises a fact issue as to whether the police officers were neutral in their efforts to keep the peace.[11] Plaintiffs initially resisted the re *823 possession by objecting with raised voices and attempting to unhook the automobile from the tow truck. And only after the police intervention did plaintiffs quit their efforts to stop the repossession. The officers may have precluded a property owner from exercising her right to prevent her lawful property from being towed away from her own driveway. See Ben Cooper Motor Co., 287 P. at 1018.
In any event, what exactly each of the officers did and said, to whom, in what tone, and with what indicia of state sanction are issues that should be determined at trial. Plaintiffs have raised sufficient evidence of state action to defeat the summary judgment motion. We reverse the grant of summary judgment in favor of the police officers on plaintiffs’ § 1983 claim.
IY.
Defendant police officers assert that, even if their conduct amounted to state action sufficient to trigger § 1983 liability, they are entitled to qualified immunity. The doctrine of “[qualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal' liability on account of later-announced, evolving constitutional norms.” Pierce v. Gilchrist, 359 F.3d 1279, 1299 (10th Cir.2004). When a defendant raises the qualified immunity defense on. summary judgment, the plaintiff must first “demonstrate that the defendant’s actions violated a constitutional or statutory right.” Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir.2000) (quotation omitted). “[A]fter identifying the constitutional right[s] allegedly violated, courts must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place.” Pierce, 359 F.3d at 1297.
On the present record, the initial qualified-immunity inquiry is readily resolved. The Supreme Court has recognized that possessory interests in property invoke procedural due-process protections, see Fuentes, 407 U.S. at 87, 92 S.Ct. 1983, and “seizures of property are subject to Fourth Amendment scrutiny,” Soldal, 506 U.S. at 68, 113 S.Ct. 538. Further, as previously noted, Oklahoma state law limits self-help to those situations in which a creditor holds a security interest and a breach of the peace is avoided. See Okla. Stat. tit. 12A, § 1-9-609. The record contains sufficient evidence of constitutional and statutory violations to survive summary judgment.
We therefore proceed to the second inquiry, which is determining whether a right is clearly established: that is, “whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted,” Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The relevant question is whether reasonable officers, standing in the shoes of the officers here, could have believed their conduct in plaintiffs’ driveway was lawful in light of clearly established law and the information available to them.
To answer the question at the summary judgment stage, we must again accept *824 plaintiffs’ version of contested facts, along with the undisputed facts. It is undisputed that Officer Wilson informed Mrs. Marcus and Nicholas that the police “could not get involved” in a repossession and that “the police officers were there to keep the peace and make sure no one would get hurt.” Aplt. app. at 4(C) at 2. As we stated above, a police officer’s standby presence to observe and maintain the peace at a self-help repossession does not amount to official participation in a repossession or seizure. In other words, one of the officers correctly articulated the controlling legal principle at the time of incident.
Plaintiffs contend, however, that the police actually intervened on the side of Mr. McCollum. In their deposition testimony, they state that the officers assumed, without good evidence, that Mr. McCollum had a repossessory right to the Pontiac and, through physical action and verbal threats, dissuaded plaintiffs from continuing their resistance to the repossession. Viewed in the light most favorable to plaintiffs, the record could support an inference that the police officers were aware of circumstances making their actions unlawful. See Abbott, 164 F.3d at 149 (holding that reasonable police officers should know from established precedent “that their role is not to be participants in property deprivations without notice and an opportunity to be heard”). State law limiting self-help to those situations where a breach of the peace is avoided, and federal law recognizing that an unlawful repossession can amount to state action and a deprivation of property actionable under § 1983, are both clearly established.
Although a ruling on qualified immunity should normally occur early in proceedings, Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), at this point we cannot hold that the doctrine of qualified immunity applies. Genuine issues of material fact exist regarding whether reasonable officers, facing the circumstances of this case, would consider the actions here violative of plaintiffs’ constitutional and statutory rights.[12] Thus, on this summary judgment record, we are unable to conclude that the officers are shielded by qualified immunity.
V.
Accordingly, we REVERSE the district court’s entry of summary judgment in favor of the police officers and REMAND for further proceedings in accordance with this opinion.

. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties’ request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

. The dissent states that there is no evidentia-ry support in the record for this statement. Dissent, slip op. at 3-4. However, defendants made this assertion in their brief in support of summary judgment. Aplt. app., tab 4 at 1.

. Plaintiffs emphasize that they have not made a civil rights claim against the City and, therefore, the City is not a party to this appeal. Aplt. br. at 3. Moreover, plaintiffs’ briefs do not contest the district court’s sua sponte entry of summary judgment in favor of Mr. McCollum. We thus do not address whether Mr. McCollum, a private defendant, may be classified as a state actor. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n. 7 (10th Cir. 1994) (stating appellant's failure to raise an issue in his opening brief waives the point); Fed. R.App. P. 28(a)(9)(A) (providing appellant’s opening brief must contain "appellant's contentions and the reasons for them”).
Nevertheless, we disagree with the dissent’s characterization of plaintiffs’ decision to omit Mr. McCollum from this appeal as an "abandon[ment of] the gravamen of their cause of action.” Dissent at 3. The gravamen of plaintiff's cause of action, contrary to the assertions of the dissent, is that the police interfered with the efforts of the plaintiffs to protect their property interests by aiding Mr. McCollum and by threatening to take Mrs. Marcus and her son into custody. It is not necessary for plaintiffs to demonstrate that Mr. McCollum and the officers were co-conspirators as a matter of law. It is enough to show that the police participated, jointly or otherwise, to the extent that the alleged unlawful repossession assumed the character of state action. See, e.g., Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir.1985) (officer’s arrival at scene with repossessor gave repossession a cachet of legality which could constitute police intervention sufficient to establish state action); Greco v. Guss, 775 F.2d 161, 168 (7th Cir.1985) (deputy's instruction to debtor that seizure was legal and that he should leave his personal belongings constitutes state action); Howerton v. Gabica, 708 F.2d 380, 384 (9th Cir.1983) (police officers' assistance to landlord in effecting a legally deficient eviction notice put weight of state behind landlord’s private decision to evict). "Even if unintended,” the effect of intimidat *818 ing the debtor into not exercising his right to resist, “could constitute police 'intervention and aid' sufficient to establish state action.” Booker, 776 F.2d at 274. The key inquiry, of course, is whether the officer’s conduct was designed to keep the peace or to aid in the repossession.

. In an analogous situation, a panel of this court has held that a constitutional violation occurs "[w]hen a government official affirmatively facilitates or encourages an unreasonable search performed by a private person.” Specht v. Jensen, 832 F.2d 1516, 1523 (10th Cir.1987), reh'g granted on other grounds and judgment, but not opinion, vacated on other grounds, 853 F.2d 805 (10th Cir.1988). In Specht, the panel determined that plaintiffs’ evidence that a police officer lent his authority to an illegal entry "was sufficient to permit the jury to find that he was more than a mere peace-keeping bystander.” Id. at 1524.

. The states have incorporated the “without breach of the peace” limitation into their statutory schemes. See U.C.C. Rev. Art. 9, 3 U.L.A. 5, 14-18, notes on adoption of revised article 9 (2002) (listing the fifty-two states and territories which have enacted revised article 9, including § 9-609). Several federal courts have applied the principles underlying § 9-609 in analyzing the extent of state participation in a creditor’s repossession activities. See Cofield v. Randolph County Comm’n, 90 F.3d 468, 471 (11th Cir.1996); Harris v. City of Roseburg, 664 F.2d 1121, 1125-26 (9th Cir.1981); United States v. Coleman, 628 F.2d 961, 962 (6th Cir.1980); Menchaca v. Chrysler *820 Credit Corp., 613 F.2d 507, 515 (5th Cir.1980) (in dissent).

. In other words, we agree with the dissent that a police officer should not attempt to resolve a heated ownership dispute on the scene. Under such circumstances, the creditor must seek relief through judicial process. See Okla. Stat. tit. 12A, § l-9-609(b).

. The dissent points out a lack of evidence indicating that Officer Wilson was aware of the repossession before Mr. McCollum's arrival and, using that slim fact as a springboard, concludes that the officers and Mr. McCollum were not engaged in a joint endeavor. Dissent at 2; see also id. at 3-4. The officers' prior knowledge of an intended repossession, however, is not a cornerstone of plaintiffs' case. What matters is how the officers conducted themselves at the time of the intervention.

. We consider all relevant, undisputed facts in our summary judgment analysis, including *822 whether the repossession took place on a public street or in a private driveway. A federal district court has explained the significance of a repossession's occurring in “a public place removed from the [plaintiff's] residence:”
When debtors specifically object to repossession, they revoke any implied right previously granted to the creditors to enter the debtor's property without consent. Entering the debtors’ property after consent is revoked constitutes a breach of the peace. The basis for favoring debtors over creditors in these circumstances appears to be the law's historical aversion to trespass.
James v. Ford Motor Credit Co., 842 F.Supp. 1202, 1208 (D.Minn.1994) (citations, elipses, and internal quotation marks omitted); see also Billings, § 11.25 (listing "where the possession took place” and the "type of premises entered” as two of the six factors to be considered in deciding whether there has been a breach of the peace).

. As the Menchaca dissent pointed out, several facts were disputed, including whether the officers told the owners that the repossessors had the right to repossess the car and whether the officers told one of -the owners he would.be arrested if he did not turn over the keys. 613 F.2d at 514.

. Contrary to the dissent’s contention, dissent at-, n. 3, the procedural situation of Menchaca diverges from that of Barrett, 189 F.3d at 300; Jones, 909 F.2d at 1212; and Booker, 776 F.2d at 273-74. Both Barrett and Booker were decided on motions for summary judgment. Neither was resolved after fact-finding on the part of the district court. As for Jones, the appellate court determined that the district court erred in entering a directed verdict in favor of defendant on the state-action issue. Considering the evidence "in a light most favorable to [the plaintiff] and giving [him] all of the favorable inferences to which he is entitled,” the court concluded that the trier of fact should determine whether the officer’s conduct amounted to state action. Jones, 909 F.2d at 1212. Jones actually underscores the distinction between Men-chaca and the instant case.

.The dissent claims that the majority opinion wrongly emphasizes the Marcuses’ subjective view of the situation. Dissent at 829-30. In making this assertion, the dissent ignores the well-established need to "recount the facts in the light most favorable to the party opposed to summary judgment, namely Plaintiffs].” Jennings v. City of Stillwater, 383 F.3d 1199, 1200 (10th Cir.2004).
The dissent also asserts that officers other than Officer Wilson were "neutral,” by citing Mrs. Marcus’ deposition testimony. Dissent at 6. The cited statement must be placed in context. Mrs. Marcus testified that the "circle of officers standing in [her] front yard” *823 was "just neutral,” in that the officers did not call her names, lay hands on her, shout at Nicholas, or (except for the poking incident) attempt to grab him. Aplt. app., doc 4, ex. A at 93-94. In sum, Mrs. Marcus stated that the officers did not personally mistreat her. Nevertheless, advising her to "keep [her] mouth shut, go back in the house” or risk "jail that day” is not indicative of a neutral stance on the repossession. Id. at 83. The same could be said of the officer’s statement that she, not Mr. McCollum, should "to go to small claims court and get a form and fill it.” Id. at 92.

. Despite the procedural posture of this case, the dissent contends that the officers should be entitled to qualified immunity because their “actions were objectively reasonable for the purpose of keeping the peace.” Dissent at 15. It is up to a factfinder to resolve disputed issues of fact and determine if the officers' actions were indeed reasonable. The dissent's resolution of these issues is especially surprising in light of the well-established Oklahoma law prohibiting self-help repossession if a breach of the peace occurs.