**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSEPH P. SEAY, DDS, MS,

      Plaintiff - Appellant,

  v.

LINDA CAMPBELL, RON WINDER
and JEFF LUNDAY, in their
individual capacities,

      Defendants - Appellees.

No.  04-6035
(W.D. Okla.)
(D.C. No. CV-02-1028-L)

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **McKAY** , and **ANDERSON** , Circuit Judges.

---

      Joseph P. Seay, DDS, MS, appeals from the district court's order granting

the defendants' motion for summary judgment and denying his motion for partial

summary judgment in this civil rights action brought pursuant to 42 U.S.C.

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

§ 1983. In his complaint, Seay included claims for violation of due process and conspiracy. He also now asserts that he is entitled to proceed on claims for malicious prosecution and for denial of substantive due process. We **AFFIRM**.

## I

Seay has been a licensed dentist since 1993, and is a member of the Oklahoma Board of Dentistry ("Board"). [1] He completed a two-year post-dental school residency in anaesthesiology and is one of two dentist anaesthesiologists operating in the State of Oklahoma. He maintains an ambulatory practice and performs general anaesthesiology and deep sedation for dentists and dental specialists who require such services at their offices. Relying on the qualifications obtained during his residency in anaesthesiology, Seay also provides general anaesthesiology services to non-dental patients in hospitals, is on

---

[1] As in the district court, the statement of facts in Seay's brief is unduly argumentative. See Aplt. App., Vol. II at 716 n.1 (noting that Seay's statement of uncontested facts "consisted mainly of unsupported allegations, conclusory statements, and argument."). Seay also draws questionable inferences from the evidence, see, e.g., Aplt. Opening Br. at 4 (stating the Board "acquiesced to [Seay's anaesthesiology] practice" and later "attempted to surreptitiously implement anti-competitive inspection rules"). Both parties make statements that appear to find no record support. See, e.g., id. at 5 (stating that complaining witness Dunham had been "terminated by Seay after working for less than one . . . day"); Aplee Br. at 5 ("Seay's malpractice insurance does not cover epidural anaesthesia."). Parties should ensure that the factual statements in their briefs find support in the record. See generally Fed. R. App. P. 28(a)(7).

-2-

the anaesthesiology staff at two Oklahoma hospitals, and has provided pain relief to hospice patients on a charitable basis.

The Board is an agency of Oklahoma state government charged with enforcing the provisions of the State Dental Act. Okla. Stat., tit. 59 § 328.7(A). It is empowered to conduct investigations of alleged violations of the Dental Act or the Board's rules, to initiate individual proceedings, and to issue administrative penalties against dentists who are found to have committed violations of the Act or its rules. Id. §§ 328.15(B)(8), (14). The defendants are members of the Board who Seay alleges have conspired to damage his practice as a mobile dental anaesthesiologist. Defendant Jeff Lunday was the Board's president at the time Seay's allegations arose, and defendant Linda Campbell has been the Board's executive director since 1979.

Oklahoma statutes, supplemented by the Board's rules and regulations, set out the procedure under which the Board conducts its investigations and disciplines Oklahoma dentists. They provide that "[a]ny person may file a written and signed complaint with the Board." Id. § 328.43a(A). The complaint is then directed by the Board's president to two specific Board members for review. Id. This review panel conducts an investigation to determine whether it is more likely than not that the dentist has committed a violation. Id. § 328.43a(B). If the

review panel so finds, it may recommend that the Board institute an individual proceeding against the dentist.     Id. § 328.43a(D).

After hearing from the review panel, the Board determines whether to issue a "formal statement of complaint" to begin individual proceedings against the dentist. Rules & Regs., Okla. State Bd. of Dentistry §§ 195:3-1-3(b), 195:3-1-4(a). On complaint and notice of hearing pursuant to     § 195:3-1-4(b), if upon hearing the Board finds by clear and convincing evidence that the dentist has violated the Dental Act, the Board may impose appropriate disciplinary sanctions on the dentist. Okla. Stat. tit. 59, § 328.44a.

Seay's complaint in this action arises from investigations of his anaesthesiology practice by the Board beginning in 1995 and culminating in a formal statement of complaint against him in 2000.

## A

We begin with the investigations and incidents prior to the 2000 proceeding. In August 1995, defendant Campbell contacted an agent of the Oklahoma State Bureau of Narcotics and Dangerous Drugs ("OSBNDD") and requested that OSBNDD make an inquiry of its computerized system for tracking prescriptions concerning narcotic drugs prescribed by Seay. The agent conducted the inquiry and determined that during the time period between June 28, 1993 to September 15, 1995, Seay had issued a small number of prescriptions for pain-

killing drugs that the agent concluded "were not typical of prescriptions issued by a dentist." Aplt. App., Vol. I at 197. Seay later testified, and there appears to be no factual dispute, that these drugs had been issued to hospice patients. Although the OSBNDD agent proposed further investigation, apparently the matter was closed and the Board took no further action against Seay at that time.

In March 1998, Campbell received a letter from a certified registered nurse anaesthetist ("CRNA") expressing concern about Seay's anaesthesiology practice involving non-dental patients at Pauls Valley General Hospital. Campbell appointed a two-member review panel to investigate the CRNA's complaint,[2] which was dismissed by the Board after a physician reviewed the complaint and stated he "did not feel alarmed" by it, Aplt. App., Vol. I at 227, and the Board's counsel suggested that the allegations that Seay was practicing medicine without a license would be better investigated by the State Medical Board.

Dental Board rules require that dentists holding anaesthesia permits be re-inspected every three years. Board of Dentistry Rules & Regs. § 195:20-1-13. When Seay's permit came up for review in 1999, he insisted that the Board provide an impartial inspection team. There were significant delays in approval of his renewal permit, and the Board ultimately cancelled Seay's anaesthesia

---

[2] The review panel members are not defendants in this suit.

permit for non-reinspection. Seay was compelled to obtain temporary permits from the Board in order to stay in business.

**B**

Campbell received information that a dentist named Dr. Steffen was utilizing Seay's services without a facility permit. Campbell dispatched an investigator who prepared a report that lent factual support to the allegations whereupon defendant Lunday appointed a review panel to deal with the investigation on July 21, 2000. The review panel, consisting of defendant Ronald Winder and another dentist not named in this action, recommended an investigation into Dr. Seay's operating without an anesthetic permit.

Finding that Seay had written improper prescriptions for narcotic drugs, prescribed or administered drugs without a valid dentist-patient relationship, and failed to retain patient records for at least three years, the review panel concluded it had good cause to believe that Seay had violated the Act and rules of the Board. A statement of complaint was prepared. This complaint charged Seay with six violations dating back to 1995, including performance of medical procedures on non-dental patients; prescription of pain control medication to non-dental patients; failure to maintain a general anaesthesia permit at his professional facility in McAlester; providing general anaesthesia at another dentist's office where that other dentist did not hold a general anaesthesia facility permit; falsely

representing himself as a medical anaesthesiologist; and using a false and misleading trade name.

At its October 20, 2000 meeting, the Board voted to approve the statement of complaint. As Seay was a member of the Board, the Board further voted to appoint a temporary pro tem Board, which would be free from conflict of interest, to process the complaint. In February 2001, Campbell arranged for the review panel to meet with the pro tem Board. Seay contends that this meeting was designed to contaminate the pro tem Board.

The pro tem Board in turn appointed two of its members to a review panel. Both of the review panel members subsequently recommended that the complaint be dismissed. Notwithstanding this recommendation, on July 2, 2001, the Oklahoma Attorney General attempted to obtain the review panel's consensus on a proposed stipulated settlement agreement with Seay. This drew the ire of one of the review panel members, who expressed her "great displeasure" that a "blunder of this magnitude" had occurred when both review panel members had already voted to dismiss the complaint against Seay. Aplt. App., Vol. I at 373.

In spite of the recommendation to dismiss, Campbell scheduled a meeting of the pro tem Board in August 2001. She continued to work with an expert witness concerning Seay's practices into July 2001. She did not notify Seay until September 7, 2001 that the complaint against him had been dismissed.

## II

We review de novo a district court's grant of summary judgment. Marcus v. McCollum, 394 F.3d 813, 820 (10th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When we apply this standard, we view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1180 (10th Cir. 2003). "At the summary judgment stage, our role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate fact-finder, to sustain the claim." Marcus, 394 F.3d at 820 (citation omitted).

Defendants sought summary judgment on the basis that Seay's allegations fail to establish a constitutional violation, and that they were entitled to qualified immunity. Each of these arguments requires us to consider whether Seay has demonstrated that the defendants' actions violated his constitutional rights. See id. at 823. If so, then we determine whether their conduct was objectively reasonable in light of clearly-established law at the time it took place. Id.

**A**

"Under the Fourteenth Amendment, procedural due process requires notice and a pre-deprivation hearing before property interests are negatively affected by governmental actors." Marcus, 394 F.3d at 818. It is undisputed that Seay has a property interest in his professional license to practice dentistry. To establish his claimed procedural due process violation, Seay must show that the defendants did not give him adequate notice and opportunity to be heard before depriving him of this property interest.

There is some question whether Seay was "deprived" of his property interest, given that the Board ultimately dismissed its complaint against him. We need not resolve that issue, however, because summary judgment is appropriate for another reason. Seay failed to show that he did not receive adequate notice of the Board proceeding and an adequate opportunity to be heard.

Seay does not deny that he ultimately received notice of the charges included in the statement of complaint or that he had an opportunity to be heard concerning them. Indeed, the ultimate result was dismissal of the charges against him. Instead, he argues that the Board's governing statutes provided an additional layer of procedural protection by making the Board powerless to conduct "any type of investigation or disciplinary proceeding" until it had received a "written and signed complaint" against him. Aplt. Opening Br. at 10

(quoting § 328.43a(A)). As the district court pointed out, however, a violation of state law procedures (assuming the Board violated § 328.43a(A), an issue that it hotly contests) does not automatically equate to a violation of due process. See Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989).

Seay cites no authority for the proposition that due process required the Board to wait until it received a written and signed complaint about him before it could investigate whether he had violated the Dental Act. He analogizes the requirement of a complaint to a pre-termination hearing in the employment context. The Board's issuance of a statement of complaint, however, notifying Seay of the charges against him, coupled with the right to a hearing provided before discipline was imposed, plainly served the purpose of notice and a predeprivation hearing. See Rules & Regs. § 195:3-1-4(b); cf. Keney v. Derbyshire, 718 F.2d 352 (10th Cir. 1983) (holding similar New Mexico physician license revocation procedures satisfied due process, notwithstanding absence of a probable cause hearing prior to institution of proceedings against physician). We conclude that the alleged lack of a written and signed complaint before the Board began its investigation did not deprive Seay of procedural due process. Summary judgment was therefore appropriate on this claim.

**B**

The district court concluded that Seay's civil conspiracy claim could not survive summary judgment because he failed to show that the defendants had acted in concert against him. A plaintiff asserting a conspiracy to violate his constitutional rights must allege specific facts showing agreement and concerted action among the defendants. Salehpoor v. Shahinpoor, 358 F.3d 782, 789 (10th Cir. 2004), cert. denied, 125 S. Ct. 47 (2004); Tonkovich v. Ks. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998).

Much of Seay's conspiracy claim is based upon his contention that the defendants violated his constitutional rights by investigating him without a written and signed complaint. As we have seen, these allegations do not state a claim for a violation of procedural due process, and hence cannot establish a conspiracy to violate Seay's procedural due process rights. It appears, however, that Seay attempts to prove a more broad-ranging conspiracy, asserting, for example, that defendants conducted three separate investigations in order to run him out of business.

We conclude that Seay has failed to establish the existence of the claimed conspiracy between the defendants. At best, he presents a series of events in which the defendants each participated at some point, but no specific facts to show agreement and a concerted action by the defendants.

-11-

In his brief, Seay complains that after defendant Campbell initiated the 1995 investigation of his practices by contacting the OBNDD, she and other members of the Board questioned his writing of prescriptions and discussed the matter with Seay and his attorney. Seay does not discuss who these "other members of the Board" were. In his deposition testimony, however, he mentioned only Dr. Garrett, who is not a defendant in this action. There is no showing of a conspiracy between Garrett and Campbell to deprive Seay of his constitutional rights. Seay fails to show any concerted action by the defendants in connection with the 1995 investigation.

Seay states that when he successfully sued the Board in 1997 for violation of rule-making procedures, he included all three defendants in his state court lawsuit. [3] He suggests that the Board members were angered by the fact that he had sued them. This fact may suggest a motive to conspire, but does not demonstrate concerted action by the defendants.

Seay charges that the defendants worked together to process the 1998 complaint against him. It is difficult to see how this can be construed as evidence of a conspiracy. The Board members had received a complaint from a member of

---

[3]     Seay's complaint in this action targets only judicially-unreviewed executive actions by the Board, and not those of any state court. For this reason, his complaint is not barred by the     Rooker-Feldman   doctrine.   See Verizon Md., Inc. v. Public Serv. Comm'n   , 535 U.S. 635, 644 n.3 (2002).

-12-

the public, investigated the complaint, obtained the advice of an outside physician, and dismissed the complaint. Seay also complains that defendants resurrected the allegations of the 1998 complaint to form part of the 2000 complaint against him. See id. at 208. While use of the allegations dismissed as part of a prior complaint may have been improper under state law principles, Seay fails to show that this demonstrates a conspiracy to violate his constitutional rights.

This is also true of the complaint that defendant Winder "continued to work with a group of Tulsa Oral Surgeons (Seay's Competitors) to restrict the practice of any and all dental anesthesiologists like Seay." Aplt. Br. at 27-28. The only evidence Seay offers is a letter from the oral surgeons to Winder expressing anger about the "so-called dental anaesthesiologists." Seay cites no evidence that Winder acted in concert with the other defendants to pursue the oral surgeons' complaint by harassing Seay.

We are directed to evidence that in July 2000, defendants Lunday and Campbell met together, with the Board's attorney and another member of the Board, to review his general anaesthesia permit. As a result of the review, the Board requested a copy of Seay's certificate showing completion of his residency at Ohio State University. Seay contends that there was no legitimate or lawful reason for the review. At the time, however, he was operating under a temporary

anaesthesia permit while his permanent permit was under review for renewal. We are unable to conclude that this is evidence of a conspiracy.

Seay complains that the 2000 proceeding could not have gone forward without each of the defendants' separate approval. Parallel action, however, does not necessarily indicate an agreement to act in concert. Salehpoor, 358 F.3d at 789.

Finally, Seay charges that defendants Winder and Campbell continued to work together to locate an expert to testify against him, even after the Pro Tem Review Panel had unanimously recommended dismissal of the 2000 statement of complaint. It appears that at the time they took this action, the Board had not yet formally dismissed the complaint against Seay. It notified him of the dismissal of the complaint a few months later. We discern no evidence of a conspiracy to violate Seay's constitutional rights in Winder and Campbell's attempts to develop expert testimony prior to formal dismissal of the complaint against Seay.

We conclude that the district court correctly granted summary judgment on Seay's conspiracy claim.

## C

In his appellate briefing, Seay also claims that the defendants violated his substantive due process rights. Defendants respond that Seay failed to make this argument below and it is therefore waived. See e.g., Walker v. Mather (In re

-14-

Walker), 959 F.2d 894, 896 (10th Cir. 1992) (following general rule that appellate courts will not consider an issue that was not raised below). Even if Seay preserved the argument, however, summary judgment is appropriate on this claim.

Seay's complaint included a claim for "violation of due process," without specifying whether the violation implicated his right to substantive or procedural due process. We have recognized that procedural and substantive due process issues frequently overlap, and counsel may not always correctly identify the basis for a due process claim. See Tonkovich, 159 F.3d at 527-28. The clearest statement of Seay's claim as presented to the district court came in his motion for partial summary judgment, where he stated:

> The essence of Seay's claim is that the Defendants, under color of law, deprived him of his due process rights and property interests in his license to practice dentistry by intentionally ignoring the statutory requirements of both the Dental Act and Dental Board Rules and that they knowingly and falsely concocted allegations that Seay had violated the Dental Act.

Aplt. App., Vol. I at 88.

As regards the claim that the defendants ignored statutory requirements, which appears to be coterminous with Seay's assertion that defendants violated his procedural due process rights by failing to await a written and signed complaint before proceeding against him, we have already concluded that this claim lacks merit. His claim that defendants knowingly concocted false allegations against him, if proved, could potentially implicate a violation of

-15-

substantive due process.   See Tonkovich , 159 F.3d at 528 (stating substantive due process violations are those that "shock the conscience" of the court, or are arbitrary in a constitutional sense).  Seay offers no proof, however, that the Board's charges against him were "false."  Although he asserts that the Board had dismissed similar charges against him on prior occasions, and that the pro tem Board's review panel ultimately did not find it more likely than not that he had committed a violation, this does not equate to a deliberate falsehood.  Nor does merely resurrecting old charges, which had never been formally served on Seay and adjudicated against him, by itself constitute a violation of substantive due process.  We conclude that Seay has failed to establish a substantive due process claim.

**D**

Seay also argues that he established a claim for malicious prosecution. Defendants counter that Seay did not present such a claim to the district court. Although he did argue in his brief in support of partial summary judgment that he had established a claim "tantamount to" such a claim under § 1983,      he did not include a malicious prosecution claim in his complaint, nor did he move to amend his complaint to include a claim for malicious prosecution.  Defendants resisted Seay's attempt to interject a claim for malicious prosecution into the action, and the district court did not discuss the claim in its order.  Because we conclude that

-16-

the issue of malicious prosecution was not included in Seay's complaint, or in an amended complaint, and that it was not tried by consent of the parties, see Fed. R. Civ. P. 15(b), we will not consider it on appeal.

## III

The judgment of the district court is **AFFIRMED** .

Entered for the Court


Carlos F. Lucero
Circuit Judge